IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING

ESTATE OF ROGER R. KING,
by ROBERT WILMINK, Executor,

    Plaintiff,

v.

Civil Action No. 5:16-cv-1
(BAILEY)

MCELROY COAL COMPANY, a
Delaware corporation; **CONSOL
ENERGY INC.**, a Delaware corporation;
**CONSOL FINANCIAL INC.**, a
Delaware corporation; **MURRAY
ENERGY CORPORATION**, an Ohio
corporation; **KEN HARVEY**, individually;
**THE CROSBY GROUP, LLC**, a
Delaware limited liability company;
**THE CROSBY GROUP, INC.**, a Delaware
corporation; **LONGWALL ASSOCIATES, INC.**,
a Virginia corporation; **LONGWALL
ASSOCIATES INTERNATIONAL, INC.**, a
Virginia corporation; **BUCYRUS
INTERNATIONAL, INC.**, a Delaware
Corporation, **BUCYRUS MINING EQUIPMENT,
INC.**, a Delaware corporation; **BUCYRUS FIELD
SERVICES, INC.**, a Delaware corporation;
**BUCYRUS FIELD SERVICES, LLC**, a Delaware
Limited Liability Company; **CATERPILLAR, INC.**,
a Delaware corporation; **CATERPILLAR GLOBAL
MINING, LLC**, a Delaware limited liability company;
**CATERPILLAR GLOBAL MINING EQUIPMENT,
LLC**, a Delaware limited liability company; **YALE
CORDAGE, INC.**, a Maine Corporation; **THIELE
GmbH & CO. KG**, a German Corporation; **THIELE
TRANSATLANTIC TRADING, LLC**, a West
Virginia limited liability company,

    Defendants.

1

## MEMORANDUM OPINION AND ORDER GRANTING MOTION TO AMEND COMPLAINT AND SUMMONS AND GRANTING MOTION TO REMAND

On this day, the above-styled civil action came before this Court upon consideration of the Plaintiff's Motion to Amend Complaint and Summons [Doc. 48] and Motion to Remand [Doc. 50], both filed February 3, 2016. Defendants filed their various responses to the Motions [Docs. 56, 58 & 59] and Motions for Joinder [Docs. 60, 63 & 64]. Also pending before this Court is the Motion to Dismiss Defendants Ken Harvey and Consol Financial Inc. and Partial Motion to Dismiss Defendants McElroy Coal Company, Consol Energy Inc., and Murray Energy Corporation [Doc. 6], filed on January 5, 2016. Having been fully briefed, the Motions are ripe for disposition. For the reasons that follow, the Motions to Amend and Remand will be **GRANTED**.

### I. Procedural History

On October 2, 2015, the plaintiff filed suit in the Circuit Court of Marshall County, West Virginia, against the above-named defendants [Doc. 1-1]. The Complaint contains five counts. Count 1 makes general allegations that Mr. King died following an accident at the McElroy Mine on October 4, 2013. The remaining counts are as follows: (2) deliberate intent / negligence against the Mine Defendants; (3) negligence against the other defendants; (4) breach of warranty; and (5) strict liability. (Id.). On January 4, 2016, the defendants removed the above-styled action to the United States District Court for the Northern District of West Virginia based upon diversity jurisdiction [Doc. 1]. On January 6, 2016, the Honorable Frederick P. Stamp transferred this action to the docket of the undersigned, located in Wheeling, West Virginia [Doc. 9].

2

On January 5, 2016, the Mine Defendants filed their Motion to Dismiss [Doc. 6]. Therein, the Mine Defendants moved to dismiss all claims against defendants Harvey and CONSOL Financial, and the Mine Defendants moved to dismiss plaintiff's claim of negligence against the remaining Mine Defendants pursuant to Federal Rules of Civil Procedure 8(a) and 12(b)(6). (Id. at 2). Defendants assert that the Complaint fails to state a claim against defendant Harvey, who was Mr. King's supervisor, because a supervisor cannot be made a defendant in a deliberate intent action unless the complaint alleges that the person acted consciously, subjectively and deliberately formed intention to produce the specific result of injury or death to the employee in accordance with West Virginia Code § 23-4-2(d)(2)(i), which the defendants assert the plaintiff's Complaint fails to do. (Id.).[1]

Further, the defendants assert the Complaint fails to state a viable claim against CONSOL Financial because it only alleges conclusory statements and bare legal conclusions. (Id.).

Finally, defendants assert the Complaint cannot state a claim for negligence against any of the Mine Defendants because they are immune from claims of negligence under W.Va. Code § 23-2-6a, which extends workers' compensation

---

[1] In its Response [Doc. 37], plaintiff states that "[i]f McElroy Coal Company, Consol Energy Inc., and Murray Energy Corporation amend their answer to admit that Harvey was acting in the course and scope of his employment and on the employer's behalf, plaintiffs would agree to dismiss Ken Harvey without prejudice." In Reply [Doc. 45], defendants acknowledge this request and state, "the Mine Defendants hereby expressly concede consistent with all pleadings to date that Mr. Harvey was acting within the scope of his employment with McElroy at all times relevant to the action." Since this Court has remanded this matter, it will express no opinion regarding the above.

immunity to every "manager, agent, representative or employee of [the] employer . . .." (Id.). Defendants assert they have complied with the provisions of the Act, and are thus entitled to its immunities, unless they deliberately intended to produce injury or death to Mr. King as outlined in W.Va. Code § 23-4-2(d)(2)(i) or (ii). (Id.).

The stated purpose of the instant Motion to Amend the Complaint and Summons [Doc. 48] is to: (1) add a newly discovered defendant, R.M. Wilson Company, a subsidiary of a current defendant; (2) to add another allegation against the German defendant, who is not yet served; (3) to correct the spelling of the German defendant in one place in the Complaint; (4) to amend the subpoena issued to the German company to list that only the Amended Complaint is being served and not discovery; and (5) to add to the Complaint that the German Company was the maker of the flight bars at issue. The addition of R.M. Wilson Company, a citizen of the State of West Virginia, is also the basis of the instant Motion to Remand [Doc. 50].

## II. Facts

Plaintiff's Complaint [Doc. 1-1] alleges that on October 4, 2013, Roger R. King was fatally injured due to acts and omissions of the defendants, when he was struck in the head by a snatch block/sheave wheel and hook during the course of his work where defendants, including McElroy Coal Company, Consol Energy Inc., Consol Financial Inc., and/or Murray Energy Corporation, and Ken Harvey were installing a longwall system at the McElroy mine, using certain equipment and products. (Id. at ¶¶ 23, 30, MSHA Report, Ex B, W.Va. OMHST Report, Ex C).

4

Plaintiff further explains that the acts of defendants resulted in a stress and tension on the snatch block/sheave wheel and hook used by Roger King that posed a strong probability of failure and a high degree of risk and strong probability of serious injury or death. Plaintiff asserts that the moving defendants further permitted these unsafe conditions to occur or to continue to exist concerning the installation of the longwall system, which rendered the area hazardous and unsafe to servants, employees, agents or invitees working around and within it. (Id. at ¶ 35).

Plaintiff alternatively pleaded that, should it be determined through discovery that the moving defendants were not in full compliance with the Workers' Compensation Act, pursuant to W.Va. Code § 23-2-6, during the relevant time periods, or that one of more of the Mine defendants was not the employer of Roger King, then their actions constitute negligence, recklessness, and a breach of the duty of reasonable and due care owed to the plaintiff's decedent. (Id. at ¶ 42). The Complaint further asserts that, to the extent that any Mine defendant was not an employer of Roger King, each such defendant had or assumed a duty to provide proper management, safety, training, premises and safe equipment for use by the plaintiff's decedent and others. (Id. at ¶ 29).

The Complaint alleges that the Mine defendants had a specific duty to inspect and maintain their premises such that it was reasonably safe for its invitees and employees, including the plaintiff's decedent. (Id. at ¶ 27). It further asserts that defendants McElroy Coal Company, Consol Energy, Inc., Consol Financial Inc., and Murray Energy Company owned or operated and/or continue to own and operate the

5

mine premises. (Id. at ¶ 41). The Complaint alleges that all of these duties were heightened due to the presence of ultra hazardous working conditions. (Id. at ¶ 35).

The Complaint further asserts that moving defendants, "were acting as alter-ego entities of each other," and acting "in furtherance of the above alleged joint venture or joint enterprise," and "acting on their own behalf and/or on behalf of each other as the agents of one another." (Id. at ¶¶ 5, 7, 22, 27).

Thus, plaintiff has asserted that Consol Energy Inc., Murray Energy Corporation, Consol Financial Inc., and McElroy Coal Company were independently negligent in causing plaintiff's injuries. The Complaint includes the allegations that the defendants subjected the plaintiff to ultra hazardous conditions; created an unreasonably unsafe condition and/or caused or permitted unsafe conditions to occur or to continue to exist; had a duty to inspect and maintain their premises; and were on notice, either actually or constructively, and should have intervened on behalf of Roger King on defendants' property.

### III. Applicable Law

#### A. Motion to Amend

This Court must start by ruling on the plaintiff's Motion to Amend [Doc. 48] as this Court's jurisdiction will hinge on the addition of proposed defendant R.M. Wilson Co. Inc. Under Rule 15(a) a court should "freely give leave [to amend a pleading] when justice so requires." Fed.R.Civ.P. 15(a). Leave to amend a pleading should be denied only when "the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Edwards*

***v. City of Goldsboro***, 178 F.3d 231, 242 (4th Cir. 1999) (citation and internal quotation marks omitted).

In making this determination, this Court will do so with an eye toward whether plaintiff is seeking to join defendant R.M. Wilson for the purpose of destroying diversity, and in turn, this Court's jurisdiction. In ***Mayes v. Rapoport***, 198 F.3d 457 (4th Cir. 1999), the Fourth Circuit Court of Appeals stated:

> When a plaintiff seeks to join a nondiverse defendant after the case has been removed, the district court's analysis begins with 28 U.S.C. § 1447(e), which provides the district court with two options: "If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." These are the only two options for a district court faced with a post-removal attempt to join a nondiverse defendant; the statute does not allow a district court to retain jurisdiction once it permits a nondiverse defendant to be joined in the case.
>
> Under Section 1447(e), the actual decision on whether or not to permit joinder of a defendant under these circumstances is committed to the sound discretion of the district court; thus, this decision is not controlled by a Rule 19 analysis. See note 11; 14C Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure 3739, at 445 (3d ed. 1998)("Section 1447(e) gives the court more flexibility than a strict

Rule 19 analysis"). In exercising its discretion under Section 1447(e), the district court was entitled to consider all relevant factors, including: "the extent to which the purpose of the amendment is to defeat federal jurisdiction, whether the plaintiff has been dilatory in asking for amendment, whether the plaintiff will be significantly injured if amendment is not allowed, and any other factors bearing on the equities." *See* **Gum**, 5 F.Supp.2d at 414 (quoting **Coley v. Dragon Ltd.**, 138 F.R.D. 460, 465 (E.D. Va. 1990)(citing **Hensgens**, 833 F.2d at 1182)). The district court, with input from the parties, should balance the equities in deciding whether the plaintiff should be permitted to join a nondiverse defendant. *Id*.

The **Mayes** Court further noted that some courts have held the doctrine of fraudulent joinder inapplicable after the case has been removed:

Those courts reason that, since the federal court already possesses jurisdiction, it need not "ignore" the citizenship of "fraudulently joined" defendants in order to dismiss them from the case; rather, it can simply decline to permit joinder of the nondiverse defendant in the first place. We agree that the doctrine does not directly apply after removal because the district court already possesses jurisdiction. However, if the defendants can carry the heavy burden of proving fraudulent joinder, that fact should be a factor – and perhaps the dispositive factor – that the court considers in deciding whether a plaintiff may join a nondiverse defendant. Thus, the

fraudulent joinder doctrine can be yet another element of the district court's "flexible, broad discretionary approach" to resolving a post removal question of whether a nondiverse defendant should be joined under Section 1447(e). *Gum*, 5 F.Supp.2d at 414.

We emphasize that the district court was correct to carefully scrutinize Mayes's attempt to add a nondiverse defendant after removal. Especially where, as here, a plaintiff seeks to add a nondiverse defendant immediately after removal but before any additional discovery has taken place, district courts should be wary that the amendment sought is for the specific purpose of avoiding federal jurisdiction. See *AIDS Counseling and Testing Centers*, 903 F.2d at 1003 (noting fact that "plaintiffs had filed their motion to amend shortly after the case was removed to federal court and before they had undertaken any discovery" supported denial of motion to amend); *Gum*, 5 F.Supp.2d at 215 (same). Careful scrutiny of attempts at post-removal, non-diverse joinder protects the diverse defendant's "interest in keeping the action in federal court." See *Coley*, 138 F.R.D. at 465 (citations omitted).

There are, however, other interests at stake when such a joinder is sought, including the "danger of parallel lawsuits in federal and state court, which may spawn inconsistent results and inefficient use of judicial resources." *Id*. In this instance, it is apparent that the district court determined fraudulent joinder to be dispositive of the joinder question,

inasmuch as it articulated no other basis for its dismissal of [the nondiverse defendant]. Thus, having concluded that the district court could properly consider whether [the nondiverse defendant] had been fraudulently joined by Mayes, we must turn to the application of the fraudulent joinder doctrine to this case.

*Mayes v. Rapoport*, 198 F.3d 457, 461- 465.

"Fraudulent joinder requires neither fraud nor joinder. Rather, it is 'a term of art [which] does not reflect on the integrity of the plaintiff or counsel, but is merely the rubric applied when a court finds either that no cause of action is stated against [a] nondiverse defendant, or in fact no cause of action exists.' *AIDS Counseling & Testing Ctrs. v. Group W Television, Inc.*, 903 F.2d 1000, 1003 (4th Cir. 1990); *cf. Smallwood v. Ill. Cent. R. R.*, 385 F.3d 568 (5th Cir. 2004) (adopting term "improper joinder" as more accurate than "fraudulent joinder"). To show that a nondiverse defendant has been fraudulently joined, 'the removing party must establish either: [t]hat there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or [t]hat there has been outright fraud in the plaintiff's pleading of jurisdictional facts.' [*Mayes v. Rapoport*, 198 F.3d 457, 464 (4th Cir. 1999)]." *Wygal v. Litton Loan Servicing LP* 2009 WL 2524701, *2 (S.D. W.Va. Aug. 18, 2009).

"'The party alleging fraudulent joinder bears a burden– it must show that the plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor.' [*Hartley v. CSX Transp.*, 187 F.3d 422, 423 (4th Cir. 1999)]. In fact, the fraudulent joinder standard 'is even more favorable to the plaintiff than the standard

for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6).' *Mayes*, 198 F.3d at 464. Accordingly, '[a] claim need not ultimately succeed to defeat removal; only a possibility of a right to relief need be asserted.' *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 233 (4th Cir. 1993); see also *Hartley*, 187 F.3d at 426 ("Once the court identifies the glimmer of hope for the plaintiff, the jurisdictional inquiry ends.")." *Id.* Finally, "the court is not bound by the allegations of the pleadings, but may instead consider the entire record, and determine the basis of joinder by any means available." *Mayes*, 198 F.3d at 464.

## IV. Discussion

In the Motion, plaintiff asserts that "based on the discovery responses [from defendant Thiele Transatlantic] and follow up research on this company website, plaintiff now has a good faith belief that R.M. Wilson marketed, distributed and/or sold the conveyer chain and flight bars at issue in this case." [Doc. 48 at 3]. Plaintiff asserts that R.M. Wilson is a majority owned subsidiary of Thiele Transatlantic Trading, LLC, which distributes conveyor chains for it and Thiele GmbH & Co. KG. Plaintiff thus asserts that R.M. Wilson and Thiele Transatlantic Trading "have a sufficient identity between them, and knew or should have known that the action would have been brought against it, but for a mistake concerning its identity." (Id.). Plaintiff asserts that R.M. Wilson sells Thiele conveyor chains to Murray Energy for its longwall mining operations. Accordingly, plaintiff asserts this constitutes a good faith basis to name R.M. Wilson as the supplier of the conveyer chain and flight bars. The plaintiff points out that this case is in its infancy and not all defendants have been served. (Id.).

The defendants assert that this Court should deny joinder of R.M. Wilson and retain its jurisdiction over this action. The defendants argue that plaintiff seeks to join R.M. Wilson primarily for the purpose of destroying diversity jurisdiction. Defendants attempt to support this assertion by pointing out that the plaintiff contemporaneously filed its motion to amend to join R.M. Wilson the same day it moved to remand. Defendants also aver the plaintiff was dilatory in discovering the identity of R.M. Wilson as it could have discovered the same information through a simple internet search. [Doc. 59]. In further support, the defendants point to several non-binding, distinguishable cases in which this Court and others within the Northern and Southern Districts of West Virginia have declined to join a diversity defeating defendant after removal.

This Court has carefully scrutinized the proposed joinder of this post-removal, diversity defeating defendant; however, after considering the arguments of all parties and balancing the equities, this Court finds the amendment and joinder of R.M. Wilson is appropriate and not for the purpose of destroying diversity jurisdiction. This Court further finds the plaintiff was not dilatory in discovering the existence of R.M. Wilson's involvement and relationship with defendant Thiele Transatlantic Trading, LLC. This Court has studied the plaintiff's road to the eventual discovery of R.M. Wilson, and finds it was reasonably prompt. Further, to date it still does not appear to this Court whether defendant Thiele Transatlantic has confirmed or denied if R.M. Wilson sold or distributed the conveyor chain. It seems to this Court that the defendants could easily end this inquiry by denying R.M. Wilson's involvement or by producing the name of the

party which did sell and/or distribute the conveyor chain; however, defendants have not.

Having found joinder appropriate, this Court will conduct a brief jurisdictional analysis for purposes of the Motion to Remand. "We begin with the undergirding principle that federal courts, unlike most state courts, are courts of limited jurisdiction, created by Congress with specified jurisdictional requirements and limitations. Accordingly, a party seeking to adjudicate a matter in federal court must allege and, when challenged, must demonstrate the federal court's jurisdiction over the matter. If a plaintiff files suit in state court and the defendant seeks to adjudicate the matter in federal court through removal, it is the defendant who carries the burden of alleging in his notice of removal and, if challenged, demonstrating the court's jurisdiction over the matter." *Strawn v. AT & T Mobility*, 530 F.3d 293, 296 (4th Cir. 2008) (citations omitted).

Federal courts "'are obliged to construe removal jurisdiction strictly because of the significant federalism concerns implicated' and that 'if federal jurisdiction is doubtful, a remand to state court is necessary.' *Md. Stadium Auth. v. Ellerbe Becket Inc.*, 407 F.3d 255, 260 (4th Cir. 2005) (internal quotation marks, citations, and alterations omitted); see also *Shamrock Oil [& Gas Co. v. Sheets]*, 313 U.S. at 109 ('Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined.' (internal quotation marks omitted))." *Palisades Collections LLC v. Shorts*, 552 F.3d 327, 333-34 (4th Cir. 2008).

Pursuant to § 1332, diversity must be complete "such that the state of citizenship of each plaintiff must be different from that of each defendant." *Athena Automotive, Inc. v. DiGregorio*, 166 F.3d 288, 290 (4th Cir. 1999). Further, for purposes of diversity, the citizenship of a limited liability company is determined by the citizenship of its members. *General Tech. Applications, Inc. v. Exro Ltda*, 388 F.3d 114, 121 (4th Cir. 2004).

This Court, in its discretion, has found joinder of R.M. Wilson Company to be proper in this case, and thus, may not disregard its West Virginia citizenship. Therefore, the Court lacks diversity jurisdiction and must remand.

## V. Conclusion

For the foregoing reasons, this Court hereby **GRANTS** the Motion to Amend Complaint and Summons **[Doc. 48]** and Motion to Remand **[Doc. 50]**. Accordingly, this Court **JOINS** R.M. Wilson Co., Inc. as a party defendant to this action. There no longer being complete diversity, this Court further **REMANDS** this action to the Circuit Court of Marshall County, West Virginia.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein and to the Clerk of the Circuit Court of Marshall County, West Virginia.

**DATED:** March 24, 2016.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE